# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### NORTHERN DIVISION
### AT KNOXVILLE

| | | |
|---|---|---|
| KEVIN THOMPSON, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | ) ) ) | Jury of Twelve Demanded |
| Defendant. | ) ) | |

---

## CLASS ACTION COMPLAINT

---

**NOW INTO COURT** comes the Plaintiff, Kevin Thompson ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class"), by and through the undersigned attorneys, and files this Class Action Complaint for damages, restitution, and injunctive relief against Defendant Love's Travel Stops & Country Stores, Inc. ("Love's Travel Stops").

Based upon personal knowledge with respect to his own acts, and as to all other matters based upon the investigation of counsel, for his Complaint, Plaintiff states as follows:

## I. NATURE OF ACTION

1.       Love's Travel Stops advertises and sells fuel at travel stops in at least forty (40) states across the country.  Plaintiff swiped his Visa credit card at a "pay-

at-the-pump" machine[1] at a Love's Travel Stop in Lenoir City in Loudon County, Tennessee and purchased fuel. Plaintiff did not know that as his Visa credit card was being authorized, Love's Travel Stops was dictating the amount of a hold on his Visa credit card account for a sum substantially larger than the amount of his fuel purchase. By this proposed class action, Plaintiff challenges Love's Travel Stops' uniform practice of placing undisclosed and excessive credit "holds" on customers' Visa or MasterCard credit card accounts during pay-at-the-pump fuel transactions.

2.     Love's Travel Stops purportedly exerts the credit holds to secure full payment for fuel purchases made by customers using Visa or MasterCard credit cards. However, not only are these "holds" exerted by Love's Travel Stops without notice to, knowledge of, or consent by customers, but the dollar-amounts of these credit "holds" significantly exceed the actual costs of the fuel purchases. Customers receive nothing of even nominal value in return for this additional consideration seized by Love's Travel Stops. Moreover, the undisclosed "holds" result in damages to Plaintiff and Class members, *i.e.*, the loss of access to their credit for several days.

_____

[1]Pay-at-the-pump is a system used at many gas stations where customers can pay for their fuel by inserting a credit or debit card or fuel card into a slot on the pump, bypassing the requirement to make the transaction inside the station.

## II.  JURISDICTION AND VENUE

3.      Plaintiff brings this action against Oklahoma City-based Love's Travel Stops to recover damages, injunctive relief, costs of suit, and reasonable attorneys' fees arising from Love's Travel Stops' unlawful actions.

4.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs. More than two-thirds of the proposed Class are citizens of states other than Oklahoma.

5.      This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because (a) Love's Travel Stops can be found in or resides in this judicial district, (b) Love's Travel Stops had agents in this judicial district, (c) Love's Travel Stops transacted or is licensed to do business in this judicial district, and (d) a substantial portion of the affected trade and commerce described below has been carried out here.

## III.  PARTIES

### A.      Plaintiff

7.      Plaintiff resides in Knox County, Tennessee and is a citizen of the State of Tennessee.  He purchased $14.75 in fuel on February 18, 2016 at Love's

Travel Stops #480 in Lenoir City, Tennessee using his Home Federal Bank-issued Visa credit card.

8.    At the time Plaintiff made his fuel purchase from Love's Travel Stops store #480, there were no signs, stickers, labels, or other notices affixed to or at or around the fuel pumps indicating that a "hold" would be placed on his Visa credit card account, much less a "hold" greatly exceeding the amount of his purchase.

9.    On the morning following his fuel purchase, Plaintiff checked the balance on his Home Federal Bank Visa credit card account and discovered that Love's Travel Stops had put a $125 "hold" on his Visa account, nearly *nine times* the amount of his actual fuel purchase.[2]  The "hold" was not removed from Plaintiff's Visa credit card account for approximately 72 hours.  When Plaintiff subsequently questioned the manager of Love's Travel Stops store #480 about the "hold," he was informed that Love's Travel Stops "don't do that" and that "we don't own the machines."

10.    As a result of Love's Travel Stops' actions complained of herein, Plaintiff, who uses his Visa credit card to travel, was prevented from having the use of such credit for approximately 72 hours.

_____

[2]Typical credit holds made by Love's Travel Stops range from $100 for customers in  passenger vehicles pumping gasoline and $500 for customers in semi-trucks pumping diesel fuel.

### B. Defendants

11. Defendant Love's Travel Stops & Country Stores, Inc. ("Love's Travel Stops"), is a privately-held Oklahoma corporation with its principal place of business at 10601 N. Pennsylvania Ave., Oklahoma City, Oklahoma 73120-4108. Love's may be served through its registered agent, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, Tennessee 37929-9710.

12. Love's Travel Stops and its subsidiaries engage in the businesses of convenience stores, interstate highway travel centers, petroleum fuel hauling, trading and distribution, tire care, and roadside assistance in the United States. Love's Travel Stops was formerly known as Musket Corporation and changed its name to Love's Travel Stops & Country Stores, Inc. in 2001. The company was founded in 1964 and is based in Oklahoma City, Oklahoma. At all times material hereto, Love's Travel Stops engaged in, among other things, for-profit enterprises, including distributing, merchandising, and selling gasoline throughout 40 states, either directly or indirectly through their subsidiaries and affiliates.

13. Love's Travel Stops operates approximately 370 convenience stores and travel stops in 40 states, including the Lenoir City, Tennessee location at which Plaintiff purchased fuel on February 18, 2016. The company has more than 15,000 employees, with annual sales exceeding $26 billion. The company's current growth rate is about 20–25 store openings annually and it ranks ninth on Forbes magazine's annual listing of America's Largest Privately Held Companies.

## IV.  AGENTS AND CO-CONSPIRATORS

14.    The acts of Love's Travel Stops alleged in this Complaint were authorized, ordered, or done by its officers, agents, employees, or representatives, while actively engaged in the management and operation of Love's Travel Stops' business or affairs.

15.    Various persons or firms not named herein as defendants have participated as co-conspirators in the actions alleged herein and have performed acts and made statements in furtherance thereof.

## V.  FACTUAL ALLEGATIONS

**A.  Love's Travel Stops' Credit Hold Scheme**

**1.    Pay-at-the-pump credit fuel transactions**

16.    After swiping their Visa or MasterCard credit cards at Love's Travel Stops pay-at-the-pump machines, average customers stand at the pump and watch as the numbers sail from $10 to $20 to $30 and up.  Little do average customers know, however, that behind the scenes, as customers stare at the "authorizing" message on the card-reader on the pay-at-the-pump machine, computers are already imposing a "block" or a "hold" on their credit card accounts – inexplicably reserving a substantially larger portion of their available credit card balances than necessary to complete their fuel purchases.

## 2. Love's Travel Stops' pre-authorization "holds"

17.     Each oil company has its own policy of ensuring receipt of payment. There are actually two charges that hit a customer's account when they purchase fuel.  The first is an "authorization" charge, typically for $1.  Its purpose is to make sure that the card being used is a "live" card – that is, that it is a valid card. This charge is temporary and is almost immediately removed from the credit card account.  The second and larger charge is standard practice for Love's Travel Stops.  Love's Travel Stops is responsible for setting the amount of the second and larger credit hold, while the card issuer alone determines the actual duration of the second credit hold.

18.     The amount of this second, larger hold inexplicably varies and is set by Love's Travel Stops based on a variety of factors.  The holds are purportedly designed to cover the maximum cost of a fill-up.  However, Love's Travel Stops' "holds" typically range from  $100 to $500.  Worse still, the "holds" can last for several days.

19.     As Jeff Lenard, vice president of communications for the National Association of Convenience Stores, which represents most gasoline retailers, has stated, "I don't think the average consumer has any idea what goes on behind the scenes when they swipe a card . . . ."

**3.  Love's Travel Stops fails to disclose the credit "holds" to fuel customers who use Visa or MasterCard credit cards.**

20.     Despite ample opportunity to do so, Love's Travel Stops fails to warn its customers of the impending holds on their credit.  At any Love's Travel Stops store, the fuel pumps are littered with signs, stickers, and video screens warning customers to turn off their engines, notifying customers of the types of payment cards accepted, and advertising all manner of Love's Travel Stops' products.  However, not a single  warning or notice is provided to customers that once they swipe their credit card, an excessive "hold" will be placed on their credit account not only in an amount greatly exceeding the amount of their actual purchase, but even if they fail to pump a single gallon of fuel.

21.     Nor does Love's Travel Stops inform its customers that they can avoid holds on their accounts for more than the amount of the purchase by paying cash or giving their card to the cashier in the store before the purchase, and then retrieving the card and a receipt afterward for the actual cost of the fuel.

**B.     Plaintiff's Credit Hold Experience(s) at Love's Travel Stops**

22.     On February 18, 2016, Plaintiff Kevin Thompson visited Love's Travel Stops store #480 located in Lenoir City, Tennessee to purchase fuel.

-8-

23.     As do most of Love's Travel Stops' many fuel pumps, the fuel pumps at Store #480 in Lenoir City, Tennessee were equipped with self-service "pay-at-the-pump" card reading systems to allow customers the convenience of using a credit card without having to enter the store.

24.     Plaintiff pulled up to a fuel pump, exited his vehicle, and proceeded to swipe his Visa credit card using the pay-at-the-pump machine.   As the information on Plaintiff's card was read and accepted, Love's Travel Stops, without informing Plaintiff, immediately requested pre-authorization from Visa for a much larger purchase which, once approved, resulted in the card-reader screen authorizing Plaintiff to "begin fueling."

25.     Plaintiff purchased and pumped the amount of fuel shown on the pump display screen, indicating a purchase of $14.75.

26.     The pay-at-the-pump card reader dispensed a receipt to Plaintiff which showed that he had purchased the foregoing amount of fuel.

27.     Plaintiff reasonably expected that Love's Travel Stops would cause to be withdrawn – or held – a sum reasonably approximating the actual amount of fuel purchased on his Visa credit card account.

28.     Plaintiff subsequently discovered that a $125 "hold" had been placed on his Visa credit card account, almost *nine times his actual purchase*.

29.     Plaintiff was not provided any information, notice, disclosure, or other warning by Love's Travel Stops – via printed sign or sticker, or via video or audio

– that if he used his Visa credit card at the pay-at-the-pump machine to pay for fuel, Love's Travel Stops would place a hold on his account for an amount substantially larger than the amount of his fuel purchase.

30.     Because of the hold, a portion of Plaintiff's Visa credit card credit line was artificially and inexplicably frozen for three days.

31.     Plaintiff was damaged by the lack of access to his credit funds in the amount of the hold for the duration of the hold.

## VI.   CLASS ACTION ALLEGATIONS

32.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

33.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiff brings this action on behalf of himself and as a representative of the following class (the "Class"):

> All persons within the United States ("Class Jurisdictions") who, for the longest period available by the relevant periods of limitations, purchased fuel using a Visa or MasterCard credit card at a travel stop or fuel center owned and operated by Love's Travel Stops, or its designated agent, who were not informed that Love's Travel Stops would require a pre-authorization hold which resulted in a "hold" placed on their Visa or MasterCard credit card account in an amount greater than the actual purchase of fuel (along with all reasonable and disclosed service fees).

-10-

Excluded from the Class are Defendant, its parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, any customer of Love's Travel Stops who previously settled with Love's Travel Stops, and any members of the judiciary who may be called upon to hear or determine any issues in this cases or on any appeal filed pursuant hereto.

34.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Love's Travel Stops. However, because Love's Travel Stops operates approximately 370 travel stops in at least 40 states, Plaintiff believes that, due to the nature of the trade and commerce involved, there are most likely hundreds of thousands of Class members, geographically dispersed throughout the United States, making joinder of all Class members impracticable.

35.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff and all Class members were damaged by the same wrongful conduct of Love's Travel Stops, as alleged herein, and the relief sought is common to the Class.

36.     Numerous questions of law or fact arise from Love's Travel Stops' conduct that are common to the Class, including but not limited to:

     a.    Whether Love's Travel Stops requires, without its customers' knowledge or consent, pre-authorizations or "holds" on its customers' Visa or MasterCard credit card accounts when the amount of the pre-authorization substantially exceeded the amount of the customers' actual purchase;

-11-

b. Whether Love's Travel Stops' practice of requiring, without its customers' knowledge or consent, pre-determined pre-authorizations for fuel purchases constitute a violation of the unfair or deceptive trade practice laws of the Class Jurisdictions;

c. Whether Plaintiff and the other members of the Class were injured by Love's Travel Stops' conduct, and, if so, the appropriate class-wide measure of damages for Class members;

d. Whether Love's Travel Stops owes a duty to inform its customers that it requires a pre-authorized transaction which will result in a "hold" being placed on customers' Visa or MasterCard credit card accounts which exceed the amount of the fuel transactions;

e. Whether Love's Travel Stops should be enjoined from continuing to improperly require pre-authorizations greater than the purchase price on their customers' Visa or MasterCard credit card accounts without customers prior knowledge or consent;

f. Whether an implied contract in-fact or in-law was formed between Love's Travel Stops and each customer; and

g. Whether Love's Travel Stops' conduct, as described, constitutes a breach of its contracts or implied contracts with its customers.

37. These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

-12-

38.     Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflict with other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in class actions and other complex litigation.

39.     Love's Travel Stops has acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

40.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.   Prosecution as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.

41.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Love's Travel Stops.

## VII.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule Tolling

42.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

43.     Class members had no way of knowing about Love's Travel Stops' deception with respect to its credit card holds.  Plainly, Love's Travel Stops was intent on concealing its behavior from consumers.

-13-

44.     Within the time period of any applicable statutes of limitation, Plaintiff and members of the Class could not have discovered, through the exercise of reasonable diligence, that Love's Travel Stops was concealing the conduct complained of herein.

45.     Plaintiff and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect that Love's Travel Stops was unlawfully placing credit holds on their Visa or MasterCard credit card accounts; nor would a reasonable and diligent investigation have disclosed that Love's Travel Stops was doing so.  Nor in any event would such an investigation on the part of Plaintiff or other Class members have disclosed that Love's Travel Stops valued its own financial security over the financial security of its customers and consumers.

46.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all Class members.

### B.     Fraudulent Concealment

47.     All applicable statutes of limitation have also been tolled by Love's Travel Stops' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.  Instead of disclosing its credit hold scam, or notifying its customers by placing signs at its pumps warning customers of the credit card hold or encouraging customers to make fuel purchases inside the stores and not at the pump, Love's Travel Stops

-14-

instead falsely represented that it was not at fault, casting the blame on customers' banks or credit card issuers.

### C. Estoppel

48. Love's Travel Stops was under a continuous duty to disclose to Plaintiff and other Class members the true character, quality, and nature of the fuel purchase transactions and its practice of placing holds on its customers' Visa or MasterCard credit card accounts in amounts which frequently greatly exceeded the actual amount of the fuel purchase.

49. Love's Travel Stops knowingly, affirmatively, and actively concealed the true nature, quality, and character of the fuel purchase transaction.

50. Based on the foregoing, Love's Travel Stops is estopped from relying on any statutes of limitations in defense of this action.

## VIII. CLAIMS FOR RELIEF

### COUNT ONE

### (Violation of Deceptive and Unfair Trade Practices Acts - Damages)

51. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

52. This is an action for damages pursuant to the following unfair or deceptive trade practices acts (hereinafter "UDTPA Acts"):

> ■ Violations of the Alabama Deceptive Trade Practices Act ("ADTPA"), (Ala. Code §§ 8-19-1, et seq.);

> ■ Violations of the Alaska Unfair Trade Practices and Consumer Protection Statute, (AS § 45.50.471 –.561);

-15-

■ Violations of the Arizona Consumer Fraud Act ("ACFA"), (Ariz. Rev. Stat. §§ 44-1521, et seq.);

■ Violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 et seq.);

■ Violations of California Unfair Competition Law, (Cal. Bus.& Prof. Code §§ 17200, et seq.) and the California Consumers Legal Remedies Act, (Cal. Bus.& Prof. Code §§ 1750, et seq.);

■ Violations of the Colorado Consumer Protection Act, (Colo. Rev. Stat. §§ 6-1-101, et seq.);

■ Violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), (Conn. Gen. Stat. Ann. §§ 42-110a, et seq.);

■ Violations of the Delaware Consumer Fraud Act (CFA), (6 Del. Code Ann. Tit. 6, § 2511 et seq.);

■ Violations of the District of Columbia Consumer Protection Procedure Act ("CPPA"), (D.C. Code §28-3901 to 28-3913);

■ Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), (Fla. Stat. §§ 501.201 et seq.,);

■ Violations of Georgia's Fair Business Practices Act, (Ga. Code Ann. § 10-1-390, et seq.) and Georgia's Uniform Deceptive Trade Practices Act, (Ga. Code Ann. § 10-1-370, et seq.);

■ Violations of Hawaii's Unfair Practices and Unfair Competition Statute, (Hawaii Revised Statutes ("HRS") section 480-2;

■ Violations of Idaho Consumer Protection Act, (I.C. § 48-601, et seq.);

-16-

■ Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, (815 ILCS 505/1, et seq. and 720 ILCS 295/1a);

■ Violations of the Indiana Deceptive Consumer Sales Act, (Indiana Code §§ 24-5-0.5-1, et seq.);

■ Violations of the Iowa Consumer Fraud Act ("CFA"), (Iowa Code Section 714.16, et seq.);

■ Violations of the Kansas Consumer Protection Act ("KCPA"), (Kan. Stat. Ann. § 50-623 et seq.);

■ Violations of the Kentucky Consumer Protection Act, (Ky. Rev. Stat. § 367.110, et seq.);

■ Violations of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), (La. Rev. Stat. Ann. § 51:1405 et seq.);

■ Violations of the Maine Unfair Trade Practices Act ("UTPA"), (UTPA § 207);

■ Violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-102(b)(1), et seq.);

■ Violations of the Massachusetts Consumer Protection Act, (Mass. Gen. Laws Ch. 93a);

■ Violations of the Michigan Consumer Protection Act ("MCPA"), (Mich. Comp. Laws § 445.901);

■ Violations of Minnesota Prevention of Consumer Fraud Act, (Minn. Stat. § 325f.68, et seq.) and Violation of Minnesota Uniform Deceptive Trade Practices Act, (Minn. Stat. § 325D.43-48, et seq.);

■ Violations of the Mississippi Consumer Protection, (Miss. Code Ann. § 75-24-1, et seq.,);

■ Violations of the Missouri Merchandising Practices Act, (Mo. Rev. Stat. § 407.010, et seq.);

■ Violations of the Montana Unfair Trade Practices and Consumer Protection Act, (Montana Code Ann. MCA 30-14-101 et seq.);

■ Violations of the Nebraska Consumer Protection Act (CPA), (Neb. Rev. St. §§ 59-1601 to 59-1623 and the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. St. §§ 87-301 to 87-306);

■ Violations of the Nevada Consumer Protection Statute, (Nev. Rev. Stat. § 41.600 et seq.);

■ Violations of N.H. Consumer Protection Act, (N.H. Rev. Stat. Ann. § 358-A:1, et seq.);

■ Violations of the New Jersey Consumer Fraud Act ("NJCFA"") , (N.J. Stat. Ann. § 56:8-1 et seq.);

■ Violations of the New Mexico Unfair Practices Act ("UPA"), (N.M. Stat. § 57-12-1 et seq.);

■ Violations of New York General Business Law § 349, (N.Y. Gen. Bus. Law § 349) and Violations of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350);

■ Violations of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1, et seq.);

■ Violations of the North Dakota Unfair Trade Practices Law, (N.D. Cent. Code §§ 51-10-01 through 51-10-08);

■ Violations of the Ohio Consumer Sales Practices Act, (Ohio Rev. Code §§ 1345.01, et seq.);

■ Violations of the Oklahoma Consumer Protection Act, (Okla. Stat. tit. 15, § 751 et seq.);

■ Violations of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §§ 646.605, et seq.);

■ Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, (73 P.S. § 201-1, et seq.);

■ Violations of the Rhode Island Unfair Trade Practices and Consumer Protection Act ("the Act"), (R.I.G.L. § 6-13.1-1 et seq.);

■ Violations of the South Carolina Consumer Protection Code ("SCCPC"), (S.C. Code Section 37-1-102, et seq.) and the South Carolina Unfair Trade Practices Act ("SCUTPA"), (S.C. Code Sections 39-5-10 to 39-5-560);

■ Violations of the South Dakota Deceptive Trade Practices and Consumer Protection statute, (S.D. Codified Laws §§ 37-24-1 through 37-24-48);

■ Violations of the Tennessee Consumer Protection Act ("TCPA"), (Tenn. Code Ann. § 47-18-101 et seq.);

■ Violations of the Texas Deceptive Trade Practices Act, (Tex. Bus. & Com. Code §§ 17.41, et seq.);

■ Violations of the Utah Consumer Sales Practices Act, (Utah Code Ann. § 13-11-1 to -23);

■ Violations of the Vermont Consumer Fraud Act ("VCFA"), (9 V.S.A. §§2451-2480n);

■ Violations of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, et seq.);

■ Violations of the Washington Consumer Protection Act, (Wash. Rev. Code Ann. §§ 19.86.010, et seq.);

■ Violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), (W. Va. Code § 46A-1-101 et seq.);

■ Violations of the Wisconsin Deceptive Trade Practices Act, (Wis. Stat. § 110.18); and

■ Violations of the Wyoming Consumer Protection Act (WCPA), (W.S. §§ 40-12-101 through 114).

53.     Plaintiff and the Class are "consumers" as defined in the foregoing statutes.

54.     The facts of this complaint (*i.e.*, the purchase of fuel) constitutes "trade or commerce" under the foregoing statutes.

55.     The actions of Love's Travel Stops, requiring an arbitrary pre-determined, pre-authorization amount, have directly resulted in "holds" being placed on Plaintiff and Class members' Visa or MasterCard credit card accounts for periods as long as 72 hours.

56.     Love's Travel Stops knew, or should have known, that it did not disclose the pre-authorization amounts, which greatly exceeded the purchases made by Plaintiff and Class members.  By taking action(s) which directly resulted in wrongfully depriving Plaintiff and Class members of the use of their credit, Love's Travel Stops engaged in unconscionable acts or practices, and/or an unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the foregoing statutes.

57.     By the non-disclosure of material facts alleged above, Love's Travel Stops deceived – and continues to deceive – its consumers.  This conduct constitutes unlawful, unfair, deceptive, and fraudulent business practice within the meaning of the foregoing statutes.

-20-

58.     Plaintiff and Class members did not receive the full value of their purchase considering the fact that Love's Travel Stops secretly required the added security of a pre-authorization amount which was tantamount to an unlawful taking of their credit and an impermissible deposit, which caused Plaintiff and Class members to suffer damages.

59.     As a result of Love's Travel Stops' non-disclosures, Plaintiff and Class members suffered damages.

60.     Pursuant to the foregoing statutes, Plaintiff and Class members are entitled to receive actual damages.

61.     Plaintiff and Class members have incurred attorney's costs and legal fees in bringing this action.

## COUNT TWO

### (Violation of Unfair or Deceptive Trade Practices Acts - Injunction)

62.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

63.     This is an action for injunctive relief pursuant to the unfair or deceptive trade practices acts of the Class Jurisdictions, as set forth above.

64.     The actions of Love's Travel Stops, requiring an arbitrary pre-determined, pre-authorization amount substantially exceeding actual fuel purchases, have directly resulted in "holds" being placed on Plaintiff and Class members' Visa or MasterCard Card credit card accounts for periods as long as 72 hours.

-21-

65. Love's Travel Stops knew, or should have known, that it did not disclose the pre-authorization amounts, which greatly exceeded Plaintiff and Class members' purchases. By taking action(s) which directly resulted in wrongfully depriving Plaintiff and Class members of the use of their credit, Love's Travel Stops engaged in unconscionable acts or practices, and/or an unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the foregoing statutes.

66. By the non-disclosure of material facts alleged above, Love's Travel Stops deceived and continues to deceive its consumers.

67. Love's Travel Stops continues to request pre-authorizations on funds from consumers' Visa or MasterCard credit card, despite knowing that it has failed to disclose the intent to require pre-authorization in amounts greatly exceeding a consumer's purchase amount and despite representing that the total obligation for the transaction is for the amount of fuel purchased. By taking action which leads to wrongful alienation of consumers from the use of their credit, Love's Travel Stops continues to violate the foregoing statutes and is likely to violate those statutes in the future.

68. This conduct constitutes unlawful, unfair, deceptive, and fraudulent business practice within the meaning of the foregoing statutes.

69. Plaintiff and Class members have incurred attorney's costs and legal fees in bringing this action.

## COUNT THREE

## BREACH OF IMPLIED-IN-FACT CONTRACT

70.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

71.     Plaintiff and Class members entered into a customary implied consumer self-service fuel purchase contracts with Love's Travel Stops to purchase fuel using  Visa or MasterCard credit cards, based on the advertised price of the fuel per gallon.  The contracts were not bargained for and Love's Travel Stops did not inform Plaintiff or Class members that Love's Travel Stops required yet an additional financial obligation or that Plaintiff and Class members were required to place what were tantamount to deposits or give Love's Travel Stops any added form of security in relation to the transaction.

72.     Plaintiff and Class members made an offer to Love's Travel Stops to purchase fuel by taking receipt of the above-referenced amount of fuel and tendering like payment for same using their Visa or MasterCard credit cards, as stipulated by standardized terms as advertised by Love's Travel Stops.

73.     Love's Travel Stops accepted Plaintiff and Class members' offers by tendering gasoline.

74.     Immediately after Plaintiff and Class members swiped their Visa or MasterCard credit cards, and without their knowledge or consent, Love's Travel Stops sought a form of added security in regards to the pending transaction by requiring through its pay-at-the-pump point-of-sale card reading device that Visa

-23-

or MasterCard pre-authorize a sum greatly exceeding the amount of the actual fuel purchase. Unaware of the already completed pre-authorization, Plaintiff and Class members took possession of the referenced fuel. Love's Travel Stops breached the implied-in-fact contract by secretly requiring the excessive pre-authorization which prevented Plaintiff and Class members from using said funds for a period as long as 72 hours. In reality and contrary to the implied-in-fact contract, the purchase of fuel actually required that Plaintiff and Class members give Love's Travel Stops security which was not bargained for and which cost Plaintiff and Class members the amount of the sum held for the length of the hold.

75. Plaintiff and Class members' fuel purchases constituted valid and enforceable implied-in-fact contracts, which Love's Travel Stops breached by secretly exacting more consideration from the Plaintiff and Class members for their fuel purchases than the Plaintiff and Class members had agreed to pay, *i.e.*, putting a hold on Plaintiff and Class members' Visa or MasterCard credit card accounts for an amount substantially higher than the actual amount of Plaintiff's fuel purchase.

76. Plaintiff and Class members sought to purchase fuel from Love's Travel Stops for the per gallon price advertised. Plaintiff and Class members inserted their Visa or MasterCard credit cards into the pay-at-the-pump machines to authorize the purchases. They pumped fuel into their vehicles and replaced the

fuel nozzles back onto the pumps. They retrieved their receipts from the pay-at-the-pump machines indicating the total amount the purchases.

77. The parties' agreements can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and common sense and understanding. Thus, the parties' assent to contract is evidenced by the circumstances surrounding Plaintiff and Class members' purchases of fuel, as described herein, all of which infers that the parties' agreement exists as a matter of tacit understanding and makes it reasonably certain that the agreement was that Plaintiff and Class members would purchase fuel for the stated advertised price and nothing more. Love's Travel Stops' actions in placing a "hold" on Plaintiff and Class members' Visa or MasterCard credit card accounts in an amount substantially exceeding the amount of Plaintiff and Class members' actual purchases was a material breach of the parties' agreements.

78. Plaintiff and Class members suffered damages as a result of Love's Travel Stops' breach of the implied-in-fact contract equal to the value of Plaintiff and Class members' loss of credit.

79. As a direct result of Love's Travel Stops' breach of contract, Plaintiff and Class members sustained damages.

## COUNT FOUR

## BREACH OF IMPLIED-IN-LAW CONTRACT/UNJUST ENRICHMENT

80.     Plaintiff re-alleges each allegation set forth in the preceding paragraphs of this complaint.

81.     Alternatively, if the Court determines that an implied-in-fact contract did not arise from the Plaintiff and Class members' fuel purchase transactions, an implied-in-law contract arose because Plaintiff and Class members were lured to the Love's Travel Stops by the advertised fuel prices.  They pulled up to the fuel pumps and swiped their Visa or MasterCard credit cards using the pay-at-the-pump machines.  Plaintiff and Class members pumped the fuel, hung up the nozzles, and retrieved their receipts showing a charge to their Visa or MasterCard Card credit cards for the exact amount of fuel they had pumped and purchased. In fact, Love's Travel Stops had placed a hold on the Visa or MasterCard credit card accounts of Plaintiff and Class members, disproportionately reducing Plaintiff and Class members' credit limits until the "holds" were released.

82.     Unbeknownst to Plaintiff and Class members, they paid more for fuel than they realized or intended, as were deprived of the benefit of their credit for the length of the hold.  To secure payment of the actual fuel purchase, Love's Travel Stops engaged in affirmative conduct to exert the "hold" on Plaintiff and Class members' credit for an amount greatly exceeding the fuel purchase price.  Thus, Love's Travel Stops plainly benefitted from exerting the arbitrarily excessive

-26-

"hold" on Plaintiff and Class members' credit. By reason of the unlawful conduct, Love's Travel Stops should make restitution to Plaintiff and Class members of a sum equal to the value of their "held" credit.

83.     To the extent Plaintiff and Class members are required to have exhausted administrative remedies before bringing a claim for breach of an implied contract in law or unjust enrichment, exhaustion of any such remedies is not required in this instance because: (a) once Love's Travel Stops placed the "hold" on Plaintiff and Class members' Visa or MasterCard credit card accounts, the length of the "hold" was out of Love's Travel Stops' control; (b) the issues are of the type that would be appropriate for judicial determination, and (c) applying the doctrine here would result in substantial financial hardship, inequity and economic inefficiency and would violate public policy. Further, any action which might have been taken by Plaintiff to pursue administrative remedies would have been futile.

84.     In equity, Love's Travel Stops should not be allowed to retain the economic benefit derived from its improper conduct, but should instead be ordered to pay restitution and prejudgment interest to Plaintiff and Class members.

**COUNT FIVE**

**FRAUDULENT CONCEALMENT/FRAUD BY CONCEALMENT**

85. Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as though fully set forth herein.

86. Love's Travel Stops intentionally concealed and suppressed material facts concerning its scheme to secretly put a "hold" on Plaintiff and Class members' Visa or MasterCard credit card accounts, requiring its fuel customers to pre-authorize amounts substantially exceeding the amount of their fuel purchases, preventing Plaintiff and Class members from using the amount of credit "held" for periods of up to 72 hours.

87. Plaintiff and Class members reasonably relied upon Love's Travel Stops' false representations. They had no way of knowing that Love's Travel Stops' representations about the price of fuel were false and misleading. As alleged herein, Love's Travel Stops employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Love's Travel Stops' deception on their own.

88. Love's Travel Stops' omissions were material to Plaintiff and Class members, both because they concerned the price of fuel and also because they played a significant role in Plaintiff and Class members' fuel purchases. As Love's Travel Stops well knew, its customers, including Plaintiff and Class members, highly valued that the fuel they were purchasing was competitively priced, and

they paid accordingly, only to discover that Love's Travel Stops had placed excessive "holds" on their Visa or MasterCard credit card accounts, depriving them of credit.

89.    Love's Travel Stops had a duty to disclose the credit hold scheme it engaged in because knowledge of the scheme and its details were known and/or accessible only to Love's Travel Stops, because Love's Travel Stops had exclusive knowledge as to implementation and maintenance of its scheme, and because Love's Travel Stops knew the facts were not known to or reasonably discoverable by Plaintiff or Class members.  Love's Travel Stops also had a duty to disclose because it made general affirmative representations about the price of fuel.

90.    Love's Travel Stops' fuel pumps are littered with displays, signs, and stickers warning customers to turn their engines off before pumping fuel, describing the pay-at-the-pump process, and various other customer service-related information.  Love's Travel Stops' pay-at-the-pump machine also displays its own set of customer instructions, advising customers how to swipe their credit or debit cards, asking them whether they want to purchase a car-wash, and when to start fueling their vehicles.  Having volunteered to provide such information to Plaintiff and Class members, Love's Travel Stops had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the purchase of fuel by Plaintiff and Class members.

-29-

91. Love's Travel Stops actively concealed and/or suppressed these material facts, in whole or in part, to secure its profits, and it did so at the expense of Plaintiff and Class members.

92. Love's Travel Stops was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

93. Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damage, as described herein.

94. Love's Travel Stops' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and Class members' rights and the representations that Love's Travel Stops made to them, in order to enrich Love's Travel Stops. To the extent permitted under applicable law, Love's Travel Stops' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. That the summons be issued and that Love's Travel Stops be duly served with a copy of this Complaint and required to answer same, and that this Court decree and enter judgment;

B. That the Court certify the Class as proposed and appoint the Plaintiff as a representative of the Class (and where appropriate, subclass representative) and appoint Gordon Ball as Interim Lead Class Counsel;

C. Love's Travel Stops has engaged in violations of common and statutory  law and that Plaintiff and the members of the Class (or where appropriate, subclasses) have been injured in their business and property as a result of Love's Travel Stops' violations;

D. Plaintiff and the members of the Class (or, where appropriate, subclasses) recover damages sustained by them, including punitive damages, as provided by law, and that a judgment in favor of Plaintiff and the Class be entered against Love's Travel Stops in an sum permitted by such laws, including aggregated damages for absent Class members;

E. Love's Travel Stops, its subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing the unlawful conduct alleged herein;

F. Plaintiff and members of the Class (or, where appropriate, subclasses) be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

G.     Plaintiff and members of the Class (or, where appropriate, subclasses) recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

H.     Plaintiff and members of the Class (or, where appropriate, subclasses) receive such other or further relief as may be just and proper.

Respectfully submitted, this 24th day of March, 2016.

/s/ Gordon Ball
Gordon Ball
TN BPR#001135
**GORDON BALL, PLLC**
550 West Main Street, Ste. 600
Knoxville, TN 37902
Tel: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

Thomas C. Jessee
**JESSEE & JESSEE**
412 East Unaka Avenue
P.O. Box 997
Johnson City, TN 37605-0997
Tel: 423.928.7176

Lance K. Baker
Tenn. Bar #: 032945
**THE BAKER LAW FIRM**
550 Main Street, Ste. 600
Knoxville, TN 37902
Tel: 865-525-7028
Fax: 865-525-4679
lkbakerlaw@gmail.com

*Counsel for Plaintiff*

-32-